IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ATLANTIC COAST PIPELINE, LLC | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:18-cv-00115 |
| NELSON COUNTY BOARD OF SUPERVISORS, *et al*. | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Defendants Nelson County Board of Supervisors and Nelson County, Virginia, (collectively, the "County"), by counsel, submit this memorandum in support of their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

STATEMENT OF THE CASE

Plaintiff, Atlantic Coast Pipeline, LLC ("ACP") filed a complaint for declaratory judgment and injunction relief, seeking a declaration from this Court that the County's Floodplain Management Ordinance is preempted by the Natural Gas Act, preliminary and permanent injunctions from enforcing the County's Floodplain Management Ordinance against ACP, and attorneys' fees and costs.

STATEMENT OF FACTS

ACP is an interstate natural gas company consisting of a partnership between subsidiaries of Dominion Energy, Inc., Duke Energy Corporation, and The Southern Company engaged in the business of transporting natural gas in interstate commerce through the Northeast and Mid-Atlantic markets, including Virginia. (Compl. ¶¶ 1, 2.) ACP was formed for the purposes of

owning, developing, constructing, operating, and maintaining approximately 600 miles of underground natural gas transmission pipeline to transport natural gas from West Virginia through Virginia on its way to North Carolina. The pipeline will cross approximately 27.2 miles of Nelson County. (*Id*. ¶ 8.)

ACP is regulated by the Federal Energy Regulatory Commission, which determines whether natural gas transportation facilities are in the public convenience and necessity and grants Certificates of Public Convenience and Necessity to construct and operate such facilities when and where it deems appropriate. (*Id*. ¶ 10.)

On September 18, 2015, ACP applied for a Certificate of Public Convenience and Necessity, and such Certificate was granted by FERC on October 13, 2017. (*Id*. ¶¶ 12, 13.) The FERC Certificate contains the following statement: "Any state or local permits issued with respect to the jurisdictional facilities authorized herein must be consistent with the conditions of this certificate. The Commission encourages cooperation between interstate pipelines and local authorities. However, this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction or operation of facilities approved by this Commission." (*Id*. ¶ 14.)

On September 12, 2017, the County amended its floodplain management regulations (the "Floodplain Management Ordinance"). Pursuant to the County's Floodplain Management Ordinance, "[a]ll uses, activities, and development occurring within any floodplain district … shall be undertaken only upon the issuance of a zoning permit," which permits are subject to administrative review by the Floodplain Administrator. (*Id*. ¶ 16.) The Floodplain Management Ordinance prohibits "critical facilities" from being located within any area classified as a "Special Flood Hazard Area" unless a variance is granted by the Board of Zoning Appeals

("BZA"). (*Id.* ¶ 17.) "Critical facilities" are those that include "hazardous materials or fuel storage, and other similar improvements and uses," and variances may only be approved where stringent criteria have been satisfied. (*Id.* ¶¶ 18, 19.) Failure to comply with any of the requirements or provisions of the Floodplain Management Ordinance constitutes a misdemeanor. (*Id.* ¶ 21.)

Approximately 3.5 miles of pipeline and 1 mile of access roads will cross the areas designated as Special Flood Hazard Areas. (*Id.* ¶ 20.)

In October of 2017, ACP submitted a "Floodplain Development Package" requesting zoning permits to cross eleven (11) floodplains, including two areas designated as a "Floodway District," containing "No-Rise Certificates" prepared by a licensed engineer, and requesting variances from the BZA for proposed work in the Floodway Districts. (*Id.* ¶¶ 22, 23, 24.) On January 24, 2018, ACP was notified that the County classified the pipeline as a "critical facility" that required variances for all floodplain crossings. (*Id.* ¶ 27.) Public hearings on the variance requests were scheduled for February 12, 2018. (*Id.* ¶ 25.)

The County retained an engineering consultant to review ACP's application and to provide a recommendation to the BZA on the variance requests; thereafter, the County requested that ACP provide it with additional information, including construction methodologies, hydraulic and hydrologic (H&H) analyses for all floodplain crossings, and additional technical data. (*Id.* ¶ 28.)

On February 5, 2018, the BZA unanimously voted to dismiss seven of ACP's eleven variance requests because ACP did not have a recorded easement or consent from the underlying property owner to request a floodplain permit for the property. (*Id.* ¶ 29.) ACP requested that the BZA defer action on the remaining four variance applications. (*Id.*)

From February through September 2018, ACP provided additional information to the County's consultant and revised its modeling to develop revised stream hydrology at each crossing. (*Id*. ¶¶ 31, 32.)

By letter dated September 21, 2018, ACP requested that its application be placed on the BZA's agenda, and its application was placed on the December 3, 2018, agenda. (*Id*. ¶¶ 33, 34.) In the months leading up to the hearing date, ACP continued to provide information requested by the County's consultant. (*Id*. ¶¶ 35, 36.)

ACP's application was considered by the BZA on December 3, 2018. (*Id*. ¶ 37.) At this meeting, the Planning Director reported that ACP provided all information required by the Floodplain Management Ordinance, members of the public spoke in opposition to the application, and the County's consultant recommended conditional approval of the application. (*Id*.) The BZA then voted to deny all four variance requests. (*Id*.)

ACP believes that it is highly likely that the BZA will deny the remaining seven requests, which are not currently before the BZA. (*Id*. ¶ 38.) ACP does not identify the status of those requests or whether ACP has received property owner consent for a floodplain permit for those properties.

ACP asserts that compliance with the Floodplain Management Ordinance will delay and prevent ACP from constructing its pipeline because it will be unable to obtain the zoning permits necessary for the floodplain crossings in the Special Flood Hazard Areas or Floodway Districts. (*Id*. ¶¶ 17, 22, 27, 39.)

ARGUMENT

I. STANDARD OF REVIEW.

When evaluating a motion to dismiss for failure to state a claim, a Court must accept as true all well-pled allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). Further, the court need not accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986), conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "enriching commentary," *Almarode v. Newton*, No. 3:16CV637-HEH, 2017 WL 123441, at *2 (E.D. Va. Jan. 12, 2017).

5

II. THE COUNTY'S FLOODPLAIN MANAGEMENT ORDINANCE IS IMPOSED BY THE NATIONAL FLOOD INSURANCE ACT, WHICH IS NOT PREEMPTED BY THE NATURAL GAS ACT.

The sole basis for ACP's declaratory judgment action and injunction requests stems from a mistaken belief that the County's Floodplain Management Ordinance was adopted solely and exclusively pursuant to Va. Code § 15.2-2280.[1] *See* Compl. ¶ 15. From that mistaken belief, ACP then incorrectly concludes that the Natural Gas Act, 15 U.S.C. §717, *et seq*., preempts that state law and the County's ability to adopt and enforce floodplain management regulations. The County's Floodplain Management Ordinance, however, was adopted pursuant to a federal mandate issued to all community participants in the National Flood Insurance Act, which established the National Flood Insurance Program and commissioned the Federal Emergency Management Agency ("FEMA") to promulgate a unified system of minimum floodplain management regulations. *See*, 42 U.S.C. § 4001, *et seq*.

    A.    <u>Preemption is determined by examining Congressional intent.</u>

ACP relies upon the Supremacy Clause to assert that the County's Floodplain Management Ordinance is preempted by the Natural Gas Act. The Supremacy Clause states that federal law is "the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. Consequently, Congress maintains the authority to preempt state law through federal legislation. *Oneok, Inc. v. Learjet, Inc.,* —— U.S. ——, 135 S.Ct. 1591, 1595, 191 L.Ed.2d 511 (2015). Whether Congress has exercised that authority is "guided first and foremost by the maxim that 'the purpose of Congress is the ultimate touchstone in every pre-emption case.'" *Epps v. JP Morgan Chase Bank, N.A.,* 675 F.3d 315, 322 (4th Cir. 2012) (quoting *Wyeth v. Levine*, 555 U.S. 555, 564, 129 S.Ct. 1187,

---

[1] Va. Code § 15.2-2280 provides localities with the authority to adopt zoning ordinances, generally.

6

173 L.Ed.2d 51 (2009)). Further, the preemption analysis is built on "the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Grp.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (alterations in original) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

        B.      <u>Congress did not intend to preempt state and local floodplain management regulations adopted pursuant to the National Flood Insurance Act.</u>

The National Flood Insurance Act did not preempt the state's police powers to regulate land use in flood-prone areas. Instead, it empowered the states to adopt the unified national system of regulations for flood plain management promulgated by FEMA, and it incentivized the states to adopt the federal regulations for flood plain management through both the proverbial "carrot" and "stick" – providing federal funding through the National Flood Insurance Program and withholding flood insurance and prohibiting lenders from issuing loans to property owners without such insurance in communities that did not comply with the Congressional mandate to adopt the federal minimum floodplain management regulations.

        1.      *Statement of Congressional findings.*

To help curb the devastation that flooding causes throughout the United States, Congress enacted the National Flood Insurance Act ("NFIA"), which authorizes the National Flood Insurance Program ("NFIP"). "The National Flood Insurance Act of 1968 ("NFIA") established a national flood insurance program that enables property owners to purchase insurance against flood risks at reasonable rates." *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1012 (5th Cir.1984); *see* 42 U.S.C. §§ 4001(a), (c), 4002(b); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 387 (9th Cir.), *cert. denied*, 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir.1998); *Gowland v. Aetna*, 143 F.3d

7

951, 953 (5th Cir.1998); *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 156 (5th Cir.1981); *West v. Harris*, 573 F.2d 873, 880 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). Congress commissioned FEMA to establish and administer the NFIP to make flood insurance available on a nationwide basis. S*ee* 42 U.S.C. § 4001(b), § 4011(a). FEMA has administered the NFIP since 1968. 42 U.S.C. § 4041.

In the NFIA's Congressional findings and declaration of purpose, Congress states that "flood disasters have … required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources…," and finds that "(1) a program of flood insurance can promote the public interest by providing appropriate protection against the perils of flood losses and encouraging sound land use by minimizing exposure of property to flood losses; and (2) ***the objectives of a flood insurance program should be integrally related to a unified national program for flood plain management***…." *Id*. § 4001(a), (c) (emphasis added).

2. *Declaration of Congressional purpose.*

Among the purposes of the NFIA, Congress states, "It is the further purpose of this chapter to (1) encourage State and local governments to make appropriate land use adjustments to constrict the development of land which is exposed to flood damage and minimize damage caused by flood losses, (2) guide the development of proposed future construction, where practicable, away from locations which are threatened by flood hazards…." and to… ***require States or local communities, as a condition of future Federal financial assistance, to participate in the flood insurance program and to adopt adequate flood plain ordinances with effective enforcement provisions consistent with Federal standards to reduce or avoid future flood losses.***" *Id*. §§ 4001(e), 4002(b)(3) (emphasis added).

8

C. The County's Floodplain Management Ordinance adopts federal law and regulations.

While there can be no question that Virginia has long followed the Dillon Rule and that the County's power to regulate land use was expressly authorized by the General Assembly through Virginia Code § 15.2-2280, Code § 15.2-2280 is, in this instance, merely a vessel through which the federal regulations were adopted pursuant to a Congressional mandate.

1. *The County's Floodplain Management Ordinance adopts federal regulations.*

The NFIA provides for flood mitigation designed to reduce the risk of flood loss in flood-prone areas and requires communities to institute flood plain management ordinances to reduce the risk of loss due to flooding. *See* 42 U.S.C. §§ 4001(c), 4002(b), 4022(b), 4102. Flood insurance is only available in communities that have adopted floodplain management criteria consistent with FEMA's regulations. 42 U.S.C. § 4022(a)(1); 44 C.F.R. § 60.1(a); *Oregonians for Floodplain Prot. v. U.S. Dep't of Commerce*, 334 F. Supp. 3d 66, 69 (D.D.C. 2018). FEMA sets the minimum floodplain management criteria. *See* 44 C.F.R. § 60.1–.26. Communities must adopt regulations consistent with FEMA's minimum eligibility criteria. 42 U.S.C. § 4012(c)(2); *cf*. 42 U.S.C. § 4022(a)(1) (prohibiting federal flood insurance to communities that have not complied with the criteria).

FEMA's minimum floodplain management regulations are set forth in 44 C.F.R. Part 60, Subpart A. The County's Floodplain Management Ordinance tracks the federal regulations. *Compare* 44 C.F.R. § 60.3 and Nelson County Floodplain Management Ordinance, § 10.8, attached as Exhibit A. Notably, the County has adopted the federal regulations that govern SFHA and Floodway Districts and the variance criteria set by federal regulations that are of

9

identified concern by ACP. *Compare, e.g.,* Ex. A, §§ 10.8.A.1, 10.14 – 10.18 and 44 C.F.R. § 60.3; and Ex. A, §§ 10.14, 10.21 and 44 C.F.R. § 60.6.

When FEMA amends its regulations, the County is given six months' notice to revise its Floodplain Management Ordinance to comply with FEMA's revised regulations. 44 C.F.R.§ 60.7. The County cannot change the delineation of any of its floodplain districts, even upon provision of studies of natural or man-made changes by the United States Army Corps of Engineers, without prior approval from FEMA. Ex. A., § 10.23(E).

> 2. *The floodplain categories applicable to the pipeline route were established by FEMA, not Nelson County, in June of 2010.*

The NFIP consists of three principal components: 1) floodplain identification and mapping by FEMA; 2) floodplain management, and 3) flood insurance. *See Nat'l Wildlife Fed'n v. FEMA,* 345 F.Supp.2d 1151, 1155 (W.D.Wash.2004). In exchange for federally subsidized flood insurance, participating communities must enact certain floodplain management ordinances aimed at reducing the risk of future flood damages. *See* 42 U.S.C. § 4022; *see also* 44 C.F.R. § 59.2(b).

ACP states that it intends to construct 4.5 miles of the pipeline and access roads within SFHA and Floodway Districts. (Compl. ¶¶ 20, 22.) The SFHAs and Floodway Districts were identified and designated by FEMA, not Nelson County, in FEMA's Flood Insurance Study ("FIS") and Flood Insurance Rate Map ("FIRM") dated June 18, 2010. *See* 44 C.F.R. § 60.3; Ex. A, § 10.8.

The NFIA requires FEMA to "identify flood-prone areas, publish flood-risk zone data, and revise that data as needed." *Great Rivers Habitat All. v. FEMA,* 615 F.3d 985, 987 (8th Cir.2010) (citation omitted); 42 U.S.C. § 4101(a). FEMA has assistance from the Secretaries of the Army, Interior, Agriculture, and Commerce as well as the Tennessee Valley Authority and

heads of other federal departments and agencies to identify flood plain areas, including areas with special flood hazards such as the ones in issue in this case.[2] 42 U.S.C § 4101(a). To carry out its mandate, FEMA conducts studies and publishes FIRMs depicting the SFHAs and the risk premium zones applicable to the communities[3] within the flood-risk zones. 44 C.F.R. § 59.1; *see* 42 U.S.C. § 4104(a)-(b). The FIRM forms the technical basis for actuarial flood insurance rates as well as any necessary floodplain ordinances required of the community. *City of Trenton v. FEMA,* 545 F.Supp. 13, 15 (E.D.Mich.1981). SFHA designations have significant implications for property owners because the NFIP prohibits federally regulated lenders from making loans secured by improved real estate located in designated SFHAs unless insurance is purchased under the NFIP. *Great Rivers Habitat All.,* 615 F.3d at 987 (internal alterations omitted); *see also* 42 U.S.C. § 4012a(b)(1).

FEMA must periodically assess the need to revise and update all floodplain areas and flood-risk zones as represented in the FIRM. 42 U.S.C. § 4101(e)-(f). When proposing new flood elevation determinations and SFHA designations, FEMA must give notice of such proposals directly to local governments of affected communities and publish them for comment in the Federal Register and a prominent local newspaper. 42 U.S.C. § 4104(a).

A property owner or lessee may appeal FEMA's proposed determinations and designations. 42 U.S.C. § 4104(b). That appeal is heard by an independent Scientific Resolution

---

[2] Indeed, a Technical Mapping Advisory Council was created pursuant to federal law to ensure that the FEMA Administrator has the most accurate flood insurance rate maps available based upon best available client sciences to assess flood risks, the impact of the rise in sea level, and future development on flood risk This Council is comprised of the FEMA Administrator, Secretaries of the Interior and Agriculture, Under Secretary of Commerce for Oceans and Atmosphere, and 16 additional members of professional surveying, mapping, engineering, flood hazard determination firms, representatives of the U.S. Geological Survey, State geographic organizations, State national flood insurance coordination offices, and the U.S. Army Corps of Engineers, among other professionals. 42 U.S.C. § 4101a.
[3] "Community" is defined as "a State or a political subdivision thereof which has zoning and building code jurisdiction over a particular area having special flood hazards." 42 U.S.C. § 4003(a)(1).

11

Panel, not the County. *Id*. § 4104-1. The Scientific Resolution Panel consists of five members with expertise in the creation and study of flood hazard maps and flood insurance and may include representatives from federal agencies not involved in the mapping study in question and from other impartial experts; employees of the Federal Emergency Management Agency may not serve on the Scientific Resolution Panel. *Id*. § 4104-1(b). "The sole grounds for appeal shall be the possession of knowledge or information indicating that (1) the elevations being proposed by [FEMA] ... are scientifically or technically incorrect, or (2) the designation of an identified [SFHA] is scientifically or technically incorrect." *Id.* § 4104(b). If presented with information purporting to contradict FEMA's flood elevation determination, FEMA must take measures to resolve such conflicts before issuing a final determination. *Id*. § 4104(e).

The SFHAs and Floodway Districts have been recognized in Nelson County as overlays to existing districts on the County's Official Zoning Ordinance Map since the FIRM was designated by FEMA on June 18, 2010. Such designations were made by FEMA pursuant to federal, not state, law and were adopted as final agency decisions after compliance with federal notice requirements.

        3.      *Federal law seeks to constrict development of land with special flood hazards.*

Congress has created criteria for land management and use in areas subject to flooding that is designed, to the maximum extent feasible, to (1) constrict the development of land which is exposed to flood damage where appropriate, (2) guide the development of proposed construction away from locations which are threatened by flood hazards, (3) assist in reducing damage caused by floods, and (4) otherwise improve the long-range land management and use of flood-prone areas. 42 U.S.C § 4102(c).

In implementing Congress' intent to constrict development in flood-prone areas while preventing hardships created by the characteristics of the subject property, FEMA has adopted regulations implementing a variance procedure under the NFIP. *See, generally*, 44 C.F.R.§ 60.6. In accordance with 44 C.F.R. Part 60, the community must enforce floodplain regulations for *all* development in SFHAs like the ones complained of by ACP. FEMA evaluates such variances granted by communities to determine whether they are consistent with stringent floodplain management standards required for participation in the NFIP. If not, a community's participation in the NFIP can be suspended by FEMA. 44 C.F.R. § 60.6(a), § 59.24.

D. No provision of the Natural Gas Act seeks to preempt the National Flood Insurance Act.

While Congress may explicity or implicitly preempt state law, (*see Oneok*, 135 S.Ct. at 1595; *see Wash. Gas Light Co. v. Prince George's Cty. Council*, 711 F.3d 412, 419-20 (4th Cir. 2013)), no provision of the Constitution provides that one federal statute may preempt another federal statute. In fact, it is generally assumed that Congress does not intentionally pass conflicting laws and that there is no inherent hierarchy of importance among federal statutes.

Because the laws of preemption do not apply to determine the hierarchy of two federal statutes and because the County's Floodplain Management Ordinance constitutes the adoption of federal law, ACP's request for a declaratory judgment and permanent injunction on the basis of preemption must be denied.

III. ACP CANNOT ESTABLISH ENTITLEMENT TO PRELIMINARY INJUNCTIVE RELIEF.

Pursuant to *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), the movant shows an entitlement to relief by establishing "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the

balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc)(quoting *Winter*, 555 U.S. at 20); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014) (discussing and applying *Winter* standard). The movant must satisfy all four requirements to obtain preliminary injunctive relief. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Further, as the Supreme Court explained in *Winter*, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Because the plaintiff's entire case relies upon the principles of preemption, it cannot establish any element required by *Winter*.

  A. <u>ACP is not likely to succeed on the merits</u>.

  ACP must show that the NGA preempts the NFIA and regulations promulgated by FEMA in accordance with the NFIA.[4] As ACP has alleged no facts upon which this Court may make a determination that Congress intended to preempt the NFIA with the NGA, ACP cannot make the requisite showing necessary to establish a likelihood of success on the merits.

  B. <u>ACP is not likely to suffer irreparable harm.</u>

  ACP has stated no facts in its Complaint to establish that it will suffer irreparable harm if an injunction is not granted. The only averment on point is the following: "If Defendants are not enjoined, Atlantic will be irreparably harmed by its inability to construct the Project as approved

---

[4] Moreover, the Complaint fails to allege facts sufficient to show that the NGA preempts the entire field of natural gas regulation in any event. *See Van Scyoc v. Equitrans, L.P.*, 255 F. Supp. 3d 636, 639–40 (W.D. Pa. 2015) (holding that the NGA did not completely preempt the field of natural gas regulation); *PPL EnergyPlus, LLC v. Nazarian*, 753 F.3d 467 (4th Cir. 2014) ("[T]he NGA will not preempt every state or local law with an incidental impact on interstate gas transportation, and that in such a system of "interlocking jurisdiction" tensions will doubtlessly arise yet nevertheless coexist within the congressionally-"assigned sphere[s].") (quoting *NW. Cent. Pipeline Corp. v. State Corp. Comm'n*, 489 U.S. at 506, 515, 515 n.12, 109 S.Ct. 1262); *see also Schneidewind*, 485 U.S. at 308, 108 S.Ct. 1145.

14

in the FERC Certificate." (Compl. ¶ 50.) Such conclusory allegation is not sufficient to meet the *Twombly/Iqbal* pleading standard.

Moreover, ACP cannot demonstrate that the lack of injunction will cause it any harm at this juncture in its pipeline project as federal permits necessary for the construction of the pipeline have been vacated by the Court of Appeals as recently as two weeks ago. *See Cowpasture River Preservation Association v. Forest Service*, ___ F.3d ___, 2018 WL 6538240 (4th Cir. 2018). Additionally, in November of 2018, the United States Army Corps of Engineers suspended Clean Water Act Nationwide Permit 12 ("NWP 12") for ACP to cross more than 1,500 streams in three states, including the floodplains in issue in this case, after the Court of Appeals vacated the Corps' verification of Mountain Valley Pipeline's compliance with NWP 12. *See Sierra Club v. United States Army Corps of Engineers*, 909 F.3d 635 (4th Cir. 2018).

Other critical federal permits have also been vacated, including the right-of-way permit issued by the National Park Service in August of 2018. *Sierra Club v. United States Dep't of Interior*, 899 F.3d 260 (4th Cir. 2018). The Court of Appeals also vacated the Incidental Take Statement issued by the U.S. Fish and Wildlife Service in May of 2018. *Sierra Club v. United States Dep't of Interior*, 722 Fed.Appx. 321 (4th Cir. 2018).

Without the necessary federal permits to proceed with construction, ACP will not be harmed by the County's Floodplain Management Ordinance. Accordingly, ACP cannot demonstrate irreparable harm if this Court declines to enter a preliminary injunction.

C. <u>The balance of equities does not tip in ACP's favor.</u>

The County's Floodplain Management Ordinance was adopted in accordance with federal laws that prohibit the issuance of flood insurance for any jurisdiction that fails to adopt floodplain management regulations promulgated by FEMA. 42 U.S.C. § 4022(a)(1).

On a parcel by parcel basis, failure to comply with the Floodplain Management Ordinance can result in the property owners over whose property ACP seeks to build its pipeline to be denied flood insurance coverage for the entirety of their property. 42 U.S.C. § 4023 (prohibiting flood insurance coverage for any property for which the FEMA Administrator finds or the County declares to be in violation of State or local laws, regulations, or ordinances which are intended to discourage or otherwise restrict land development or occupancy in flood-prone areas). Without the availability of flood insurance issued through the NFIP, lenders are prohibited by law from making loans secured by improved real estate located in designated SFHAs. 42 U.S.C. § 4012a(b)(1).

To the extent that ACP's pipeline construction is not in accordance with the County's Floodplain Management Ordinance, ACP's construction can compromise the underlying property owners' ability to receive insurance remuneration in the event of a flood, leaving such property owners without homes or the ability to rebuild or replace their possessions long after ACP has constructed its pipeline and left Nelson County.

> D. An injunction exempting ACP from compliance with all local laws, regulations and rules is not in the public interest.

In its prayer for relief, ACP seeks a declaration that the County's *Zoning Ordinance*, Floodplain Regulations, and *any other local laws, regulations, and/or rules are preempted by federal law and are, thus, null and void*. It also seeks preliminary and permanent injunctive relief enjoining the County from administering and enforcing such local laws as well as its attorneys' fees and costs from the County. Such a request is overly broad as it seeks relief beyond that necessary to construct the pipeline and is, therefore, not in the public interest.

Moreover, while there has been a Congressional finding that construction and regulation of interstate gas pipelines is in the public interest, Congress has also found that the adoption,

16

implementation, and enforcement of a unified national land use plan for floodplain management to minimize and the likelihood of personal and economic devastation from flooding disasters is in the public interest. Based upon the allegations before the Court, the Court is left without any criteria to determine which public interest should control.

## CONCLUSION

For the foregoing reasons, Nelson County Board of Supervisors and Nelson County, Virginia, by counsel, requests that this Court grant its motion to dismiss and for such other and further relief as may be necessary and this Court deems appropriate.

NELSON COUNTY BOARD OF SUPERVISORS
and
NELSON COUNTY, VIRGINIA

/s/ Jennifer D. Royer
Of Counsel

Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
1901 Denniston Ave, SW
PO Box 4525
Roanoke, Virginia 24015
540-788-2982  Telephone
540-675-4093  Facsimile
jroyer@royerlawfirm.com

AND

Phillip D. Payne, IV, Esq. (VSB # 25405)
402 Court Street, 2nd Floor
Post Office Box 299
Lovingston, Virginia 22949
434-263-5555 Telephone
434-263-4440 Fascimile
phillip.payne@phillippaynelaw.com

Counsel for defendants Nelson County
Board of Supervisors, and Nelson County, Virginia

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following users:

Richard D. Holzheimer, Jr. (VSB# 40803)
MCGUIRE WOODS, LLP
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102
Telephone: (703) 712-5000
Fax: (703) 712-5281
rholzheimer@mcguirewoods.com

/s/ Jennifer D. Royer
Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
1901 Denniston Ave, SW
PO Box 4525
Roanoke, Virginia 24015
540-788-2982 Telephone
540-675-4093 Facsimile
jroyer@royerlawfirm.com
Counsel for defendants Nelson County
Board of Supervisors and Nelson County, Virginia