CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
06/21/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ATLANTIC COAST PIPELINE,<br><br>         *Plaintiff*,<br><br>v.<br><br>NELSON CO. BOARD OF SUPERVISORS, *ET AL*.,<br><br>         *Defendants*. | CASE NO. 3:18-cv-00115<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  This matter is before the Court upon Defendants Nelson County Board of Supervisors and Nelson County's (collectively, "Nelson County") motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkts. 7, 9). In December 2018, the Nelson County Board of Zoning Appeals (BZA) denied four applications for variances submitted by Plaintiff Atlantic Coast Pipeline (ACP) pursuant to amendments to the Nelson County Floodplain Regulations ("Floodplain Regulations") prohibiting construction of "critical facilities"—including facilities involving 'hazardous materials or fuel storage" such as structures that transport natural gas—in the county's Special Flood Hazard Areas. ACP seeks a declaratory judgment that the Natural Gas Act preempts the Floodplain Regulations, as well as injunctions preventing Nelson County from enforcing the Floodplain Regulations or any similar zoning ordinance.

  Nelson County moves to dismiss on two grounds. First, Nelson County argues pursuant to Rule 12(b)(1) this case is not ripe for adjudication under Article III. Second, Nelson County argues under Rule 12(b)(6) that ACP's preemption claim necessarily fails because the Floodplain Regulation amendments were adopted pursuant to the National Flood Insurance Act (a federal statute) and thus cannot be preempted by the Natural Gas Act (another federal statute). Both arguments are without merit, and the motions to dismiss will be denied.

## I. LEGAL STANDARDS & THE DECLARATORY JUDGMENT ACT

### A. Legal Standards

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) tests a district court's subject matter jurisdiction. "The doctrine of constitutional standing arises from the case or controversy requirement of Article III, and is a jurisdictional inquiry regarding the power of the courts to adjudicate a litigant's claim." *L-3 Communications Corp. v. Serco, Inc.*, 673 F. App'x 284, 288 (4th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992)). The doctrine of ripeness is a component of Article III's case or controversy requirement and "presents a threshold question of justiciability." *Scoggins v. Lee's Crossing Homeowner's Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (internal quotations omitted).

A case is generally ripe and "fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013). A claim should generally be dismissed for lack of ripeness "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Id.* "Stated alternatively, '[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Scoggins*, 718 F.3d at 270 (quoting *Texas v. Untied States*, 523 U.S. 296, 300 (1998)). In assessing ripeness, a court must "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Doe,* 713 F.3d at 758.

Declaratory actions must satisfy Article III's ripeness requirement. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A declaratory action is ripe if the dispute it presents is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* "[T]he question in each case is whether the facts alleged under all the circumstances, show

that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim; it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Court must take all facts and reasonable inferences in favor of the plaintiff, disregard any legal conclusions, and not credit any formulaic recitations of the elements. *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

### B. The Declaratory Judgment Act

The Declaratory Judgment Act provides that in cases within a district court's jurisdiction, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal courts can exercise jurisdiction in declaratory actions "when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equipment N. Am., Inc. v. CLM Equipment Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotations omitted). However, even if a district court possesses jurisdiction, "it may nonetheless, in the exercise of its discretion, decline to entertain the action." *Id.* at 594. *See also Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 307 F.Supp.3d 433, 441 (E.D. Va. 2018) (noting that district courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" in declaratory suits).

But a district court may only refuse to entertain a declaratory action "for good cause." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994).

In considering whether to issue a declaratory judgment, a district court should consider (1) whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Travelers Indem. Co. v. Miller Bldg. Corp.*, 221 F. App'x 265, 267 (4th Cir. 2007) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)). A declaratory judgment is generally not warranted "where it is used to try a controversy by piecemeal, or to try particular issues without settling the entire controversy." *Centennial Life Ins. Co.*, 88 F.3d at 256.

## II. FACTS AS ALLEGED

Approximately 27 miles of the Atlantic Coast Pipeline (ACP) project will pass through Nelson County, Virginia. (Complaint ¶ 8). On October 13, 2017, ACP received a Certificate from the Federal Energy Regulatory Commission (FERC) authorizing the construction and operation of the project, pursuant to FERC's authority under Section 7 of the Natural Gas Act (NGA). (*Id.* ¶ 13; dkt. 1-1). The FERC Certificate contains the following language: "Any state or local permits issued with respect to the jurisdictional facilities authorized herein must be consistent with the conditions of this certificate. [FERC] encourages cooperation between interstate pipelines and local authorities. However, this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction or operation of facilities approved by [FERC]." (Complaint ¶ 14; dkt. 101 ¶ 324).

Before the issuance of the FERC Certificate, the Nelson County Board of Supervisors amended its local floodplain regulations to prohibit "critical facilities"—including "hazardous

4

materials or fuel storage, and other similar improvements and uses"—from being located in any area classified as a "Special Flood Hazard Area" without a variance from the BZA. (Complaint ¶¶ 15, 17–18). Approximately 4.5 miles of the ACP project will cross areas designated as Special Flood Hazard Areas. (*Id.* ¶ 20). Failure to comply with the zoning ordinance's requirements is a misdemeanor. (*Id.* ¶ 21).

In October 2017, ACP filed a "Floodplain Development Package" to support its request for zoning permits to cross eleven floodplains. (*Id.* ¶ 22). On January 24, 2018, Nelson County advised ACP that the pipeline qualified as a "critical facility" pursuant to Article 10-15(F) of the Floodplain Regulations, and ACP would thus be required to secure variances from the BZA for all floodplain crossings. (*Id.* ¶ 27). On February 5, 2018, the BZA voted unanimously to dismiss seven of ACP's eleven variance requests where ACP did not have either a recorded easement or an agreement with the underlying property owner to request a floodplain permit for the property. (*Id.* ¶ 29). The BZA deferred action on the remaining four variances. (*Id.*). On December 3, 2018, the BZA voted to deny all four variance requests. (*Id.* ¶ 37). ACP has not resubmitted the seven remaining variance requests, fearing the same negative result. (*Id.* ¶ 38).

In Count One, ACP seeks a declaratory judgment that the Nelson County zoning ordinance and the Floodplain Regulations are preempted by the NGA. Specifically, ACP argues that the NGA gives FERC plenary jurisdiction over the transportation and sale of natural gas in interstate commerce, and over the siting and construction of natural gas facilities. (*Id.* ¶¶ 42–44). ACP requests a declaration from this Court that, due to preemption of the Floodplain Regulations by the NGA, ACP "is not required to comply with the Zoning Ordinance, including obtaining any zoning permits for any of the floodplain crossings, as part of the construction and siting of the" pipeline. (*Id.* ¶ 47).

In Count Two, ACP seeks a preliminary and permanent injunction preventing Nelson County from "administering or enforcing the Zoning Ordinance, the Floodplain Regulations, and any other local laws, regulations, or rules purporting to govern the siting, construction, and/or operation" of the pipeline.[1] (*Id.* ¶ 54(B)).

### III.   ANALYSIS

Nelson County presents three arguments in favor of dismissal of this action: (1) that the action is not ripe under Article III given recent invalidations of permits necessary for the construction of ACP, as well as a challenge to ACP's underlying FERC Certificate pending in the D.C. Court of Appeals; (2) that the Court should exercise its discretion to decline to entertain this declaratory action; and (3) that this action should be dismissed pursuant to Rule 12(b)(6) because the Floodplain Regulation amendments in question were enacted pursuant to the National Flood Insurance Act (NFIA), a federal statute, and thus cannot be preempted by the NGA, another federal statute. The Court finds each of these arguments unavailing.

#### A.    Rule 12(b)(1) – Ripeness

Nelson County first argues that the Court lacks subject matter jurisdiction because this action is not presently ripe under Article III. This is so, Nelson County contends, because multiple permits necessary for the construction of the pipeline have recently been invalidated or suspended. These include a Clean Water Act permit suspended by the Army Corps of Engineers and permits from the National Park Service, U.S. Fish & Wildlife Service, and U.S. Forest

---

[1] ACP submits that Count Two is essentially irrelevant for purposes of the pending motions to dismiss because ACP "has not filed a motion for preliminary injunction." (Dkt. 12 at 4, n.4). ACP "reserves the right to move for a preliminary injunction, as appropriate." (*Id.*). Nelson County argues that this leaves only Count One's request for a declaratory judgment, and that the Court should exercise its discretion not to hear this declaratory action "until such time as ACP secures the permits necessary to cross Nelson County's floodplains." (Dkt. 16 at 2–3).

Service invalidated by the Fourth Circuit.[2] Nelson County argues that without these necessary permits, ACP's claims here are not ripe because they rest on "contingent future events that may not occur at all." (Dkt. 8 at 7). ACP counters that "[t]he current status of [its] federal permits does not preclude [ACP] from removing other legal obstacles to the construction" of the pipeline. (Dkt. 13 at 1). Moreover, ACP argues that its preemption claim is "indisputably fit for judicial review because it presents a purely legal issue" and because failing to address this claim would prolong uncertainty about whether ACP needs to alter the pipeline route. (*Id*. at 5–6).

"The question of whether a claim is ripe 'turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983)). "To be fit for judicial review, a controversy should be presented in a clean-cut and concrete form," which occurs "when the [challenged] action is final and not dependent on future uncertainties or intervening agency rulings." *Id*. The hardship prong of the ripeness analysis is "measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Doe*, 713 F.3d at 759.

The Court concludes that this declaratory action is ripe. Although Nelson County is correct that ACP lacks several necessary federal permits and agreements with landowners to request certain necessary variances, ACP presently has a valid FERC Certificate authorizing

---

[2] *See, e.g., Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 267 (4th Cir. 2018) (invalidating National Park Service right-of-way permit); *Sierra Club v. U.S. Dep't of the Interior*, 722 F. App'x 321 (4th Cir. 2018) (vacating U.S. Fish and Wildlife Service's incidental take statement); *Cowpasture River Preservation Ass'n v. Forest Serv.*, 911 F.3d 150 (4th Cir. 2018) (suspending U.S. Forest Service permits).

construction,[3] and the Nelson County BZA has already denied four variance requests. Given BZA's decisive action with respect to four variance requests, a "clean-cut and concrete" controversy presently exists about the validity of the underlying Floodplain Regulations. *South Carolina*, 912 F.3d at 730. Moreover, this case is fit for judicial review because it "raises purely legal questions" about whether federal law preempts the Floodplain Regulations—questions whose answers do not necessarily hinge on whether ACP ultimately obtains the requisite permits and variances. *Satellite Broadcasting & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 369 (4th Cir. 2001). *See also Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 188 (4th Cir. 2007) (noting that "if an issue is predominately legal . . . it is more likely to be found ripe").

Additionally, the Court finds that failing to address the preemption question now would impose a hardship on ACP, including the costs associated with continuing to negotiate agreements with landowners for variance requests and potentially "seek[ing] a change in the route of the pipeline" if ACP cannot obtain the permits and variances required by the Floodplain Regulations. (Dkt. 13 at 6). *See Doe*, 713 F.3d at 759 (noting that courts may consider "the cost to the plaintiff of delaying review" in evaluating the hardship prong). Finally, finding this claim

---

[3] "FERC conditioned its approval of the pipeline on ACP receiving all 'state and other federal authorizations required for the proposed project,'" including authorizations from, among others, the U.S. Fish & Wildlife Service, the National Park Service, and the U.S. Forest Service. *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 267 (4th Cir. 2018). Although these permits have been either invalidated or rescinded, and a challenge of the underlying FERC Certificate is currently pending before the D.C. Circuit, "a FERC order remains in effect unless FERC or a court of appeals issues a stay." *Mountain Valley Pipeline, LLC v. Wender*, 337 F.Supp.3d 656, 663 (S.D. W.Va. 2018). Neither the Fourth Circuit nor the D.C. Circuit has stayed the FERC Certificate, and FERC itself denied a petition for rehearing on the validity of the Certificate in August 2018.

ripe under Article III comports with precedent considering ripeness issues in similar actions, primarily from the First Circuit.[4]

B. The Court's Discretion Not to Entertain a Declaratory Action

Although the Court finds that this declaratory action is ripe under Article III, it may "nonetheless, in the exercise of its discretion, decline to entertain the action." *Volvo Const. Equip. N. Am.*, 386 F.3d at 594. A district court may only refuse to entertain a declaratory judgment action "for good cause." *Nautilus Ins. Co.*, 15 F.3d at 375. In considering whether to issue a declaratory judgment, a district court should assess (1) whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Travelers Indem.*, 221 F. App'x at 267. A declaratory judgment is generally not warranted "where it is used to try a controversy by piecemeal, or to try particular issues without settling the entire controversy." *Centennial Life Ins. Co.*, 88 F.3d at 256.

Here, the Court finds it appropriate to entertain this declaratory action. A declaratory judgment on the preemption question presented here would "serve a useful purpose" for both parties by "clarifying and settling the legal relations" between them, and between the NGA and

---

[4] *See Algonquin Gas Transmission, LLC v. Weymouth, Mass.*, 919 F.3d 54, 62–63 (1st Cir. 2019) (finding NGA preemption challenge to local ordinance ripe even where FERC certificate made "construction contingent upon the approval of another agency"); *Weaver Cove Energy, LLC v. Rhode Island Coastal Res. Mgmt. Council*, 589 F.3d 458, 468–69 (1st Cir. 2009) (finding challenge to local regulations of FERC-approved natural gas terminal project ripe even where the project had not yet "receive[d] authorization from several key federal agencies" because court's decision would be neither "advisory" nor "irrelevant"). Nelson County's reliance on *City of Fall River, Mass. v. FERC*, 507 F.3d 1 (1st Cir. 2007) as a more analogous precedent is misplaced. There, the First Circuit found a challenge *to the underlying FERC permit itself* not ripe where the permit made commencement of construction contingent on authorization from two other federal agencies, and that authorization had not yet been obtained. *City of Fall River*, 507 F.3d at 4–5, 7–8. But this case, like *Algonquin Gas Transmission* and *Weaver Cove Energy*, involves a challenge to local regulations, not the underlying FERC certificate authorizing ACP.

the Floodplain Regulations. *Travelers Indem.*, 221 F. App'x at 267. Deciding whether or not the NGA preempts the Floodplain Regulations would "afford relief from the uncertainty" and "insecurity" both parties presently experience about the viability of the regulations and ACP's eventual construction in Nelson County. *Id.* Moreover, this is not a case where the plaintiff attempts to "try a controversy by piecemeal" or to "try particular issues without settling the entire controversy." *Centennial Life Ins. Co.*, 88 F.3d at 256. Although a declaratory judgment on the discrete preemption question presented here will not resolve all conflict over the pipeline's ultimate viability, it will settle the immediate controversy about whether the NGA preempts the Floodplain Regulations. No more is required.

### B. Rule 12(b)(6) – Preemption

Nelson County also moves to dismiss pursuant to Rule 12(b)(6), arguing that the NGA cannot preempt the Floodplain Regulations because the regulations were enacted not under state law but pursuant to the National Flood Insurance Act (NFIA). (Dkt. 10 at 6). The County concedes that the regulations were enacted pursuant to Va. Code § 15.2-2280—which broadly authorizes localities to enact zoning ordinances—but contends that § 15.2-2280 was "merely a vessel through which the federal regulations were adopted pursuant to a Congressional mandate" under the NFIA. (*Id.* at 9). Since the Floodplain Regulations were, under the County's theory, adopted pursuant to a federal statute, and "no provision of the Constitution provides that one federal statute may preempt another," the County argues that "ACP's request for a declaratory judgment and permanent injunction on the basis of preemption must be denied." (*Id.* at 13).

ACP counters with arguments that the NGA preempts the Floodplain Regulations through field preemption and conflict preemption. (Dkt. 12 at 4–5). Additionally, ACP asserts that, even assuming the regulations were enacted pursuant to the NFIA, the NGA would still

preempt the regulations because the NGA's "savings clause" explicitly states that it does not affect "the rights of states under" three enumerated statutes—a list that does not include the NFIA. (*Id.* at 7; *see also* 15 U.S.C. § 717b(d)). Moreover, ACP noted at oral argument that the National Flood Insurance Program (NFIP)—which the NFIA establishes—is an entirely voluntary program, citing *Adolph v. FEMA*, 854 F.2d 732 (5th Cir. 1988) for that proposition.

At the outset, the Court notes that Nelson County comes dangerously close to pressing arguments more appropriately addressed at the summary judgment stage. Where "[t]he parties disagree as to how [a] controversy should be resolved," a motion to dismiss for failure to state a claim is typically "not the appropriate means of resolving a claim for declaratory relief." *Pruitt v. Alba Law Group, P.A.*, No. DKC-15-0458, 2015 WL 5032014, at *8 (D. Md. Aug. 24, 2015). Generally, "when a case presents a pure question of law as to federal preemption, the case should be resolved at the summary judgment stage." *Dominion Transmission, Inc. v. Town of Myersville Town Council*, 982 F.Supp.2d 570, 576 (D. Md. 2013). Accordingly, the Court's analysis of Nelson County's arguments is limited only to whether ACP fails to state a claim for declaratory relief on the face of the complaint. The Court does not reach whether ACP is substantively entitled to the declaratory relief it seeks.

With this understanding in mind, the Court finds Nelson County's arguments wholly insufficient to justify dismissal of this declaratory action under Rule 12(b)(6). Nelson County's novel argument that the Floodplain Regulations somehow acquire the status of federal law simply because Nelson County adopted them pursuant to the NFIA appears to hinge entirely on the premise that the NFIA *requires* localities to adopt such regulations and that local regulations adopted pursuant to the NFIA are therefore to be treated as federal law. The opposite is true. "By conditioning the availability of federally-subsidized insurance upon enactment of local

flood-plain management ordinances in accordance with federal standards, the NFIP represents a voluntary federal program." *Adolph*, 854 F.2d at 735–36 (further noting that the locality in that case "was not compelled to participate in the NFIP"). *See also City of Alexandria v. FEMA*, 781 F.Supp.2d 340, 343 (W.D. La. 2011) ("Participation in the NFIP is voluntary."). Indeed, Nelson County itself concedes that the NFIA merely "incentivized the states to adopt the federal regulations for flood plain management" using a "carrot" and "stick" approach, "providing federal funding through the [NFIP] and withholding flood insurance . . . in communities" that lack local flood-plain regulations that comport with federal standards. (Dkt. 10 at 7).

Since the Floodplain Regulations are simply local ordinances enacted pursuant to Va. Code § 15.2-2280 for purposes of participating in a voluntary federal program, Nelson County's argument that the NGA could not preempt the Floodplain Regulations because "the laws of preemption do not apply to determine the hierarchy of two federal statutes" is without merit. (Dkt. 10 at 13). There may, of course, be other reasons why the NGA does not preempt the Floodplain Regulations or why ACP is not otherwise entitled to the declaratory relief it seeks, but those arguments will be addressed at a later stage. At this juncture, the Court simply declines to dismiss this declaratory action under Rule 12(b)(6) on the basis of Nelson County's contention that the NGA necessarily does not preempt the Floodplain Regulations because, as the County put it at oral argument, those local regulations are "effectively federal regulation."

## V. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss pursuant to both Rule 12(b)(1) and Rule 12(b)(6) will be denied. An appropriate order will issue.

Entered this 21st day of June, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE